Oscar **DILLON, Plaintiff,**

v.

**LLOYD'S OF LONDON et al., Defendants.**

**Civ. A. No. 8590.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 9, 1959.

Edgar Corey, New Orleans, La., for plaintiff.

Kennon, White & Odom, John S. White, Jr., Baton Rouge, La., for defendants.

J. SKELLY WRIGHT, District Judge.

On May 7, 1958, Oscar Dillon, an indigent and illiterate Negro, while working in the sawmill of defendant lumber company at Amite, Louisiana, was injured when three of the fingers of his right hand were crushed in gear machinery. He claims total and permanent disability under the Louisiana Workmen's Compensation Act.[1] The defendants, admitting coverage under the Act for the employment and the accident, deny total disability and offer the amount provided for partial loss of fingers.[2]

Immediately following the accident, a company doctor amputated the first two phalanges of the fourth and fifth fingers of Dillon's right hand and placed the third finger in a cast. On May 29, 1958, Dr. Lenoir, an orthopedic surgeon called in by the company doctor, revised the amputations on the fourth and fifth fingers and amputated the distal phalanx of the third finger of Dillon's right hand. On July 31, 1958, Dr. Lenoir advised the company that Dillon was ready to return to work. Dillon failed to return but has been employed from time to time since then as a timber marker and tractor driver. He has continued, however, to have pain in the stumps of his amputated fingers and swelling in his right hand.

1. LSA-R.S. 23:1021 et seq.

2. LSA-R.S. 23:1221(4) (k).

At the time of the accident, plaintiff was a handyman around the sawmill. His duties required him to keep the mill clean and to use hand tools on occasion on unspecialized jobs. He claims inability to perform this work, or any of a similar character, because of the amputations and the pain which persists in the stumps.

■ The parties have spent much time disputing the character of Dillon's occupation at the time of his injury. The defendants suggest that he was a common laborer and as such was not entitled to permanent and total disability payments unless it is shown that he can not do "work of any reasonable character." [3] The defendants admit that this language in the Act, as to a skilled workman, means work of the same or similar description to that customarily performed at the time of the injury.[4] A common laborer, the defendants contend, is not entitled to this test under the jurisprudence, that common labor covers many kinds of work, and hence the test for total disability with respect to a common laborer must necessarily be more flexible.

The defendants' contention in this regard, while supported to some extent in some Court of Appeal cases, has not been recognized by the Supreme Court of Louisiana. Time and again the Supreme Court has been urged to apply a test for common laborers different from that used for skilled workers. The Supreme Court, however, has continued to make no distinction,[5] although it does seem that more consideration is now being given to the ability of the injured employee to compete in the common labor pool.[6]

Applying the same or similar work test in the case of Scott v. Hillyer, Deutsch, Edwards, Inc., supra, the Supreme Court held that a common laborer who had lost his little finger and two phalanges of the ring finger on the left hand was totally disabled and was entitled to compensation only under those provisions of the Act dealing with loss of members.[7] Although there is a veritable jungle of other cases on this subject in the Louisiana jurisprudence, the Scott case, being closest in point, is determinative of the issue here. It is true that the injury in the present case is to the right hand of a right-handed worker, and in Scott the similar injury was to the left. Nevertheless, that difference is not sufficient to dictate a different result.

This case, however, is further complicated by the fact that, in addition to the partial loss of the fingers, the plaintiff here has continued to suffer pain as a result of the amputations. Two respected orthopedic surgeons, one of whom examined the plaintiff at the request of the defendants, testified that the plaintiff

---

3. LSA–R.S. 23:1221(2).

4. In Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739, 741, the Supreme Court stated:

"* * * Our jurisprudence is settled that the clause 'disability to do work of any reasonable character', as contained in the compensation statute, means disability to perform work of the same or similar description, kind or character (not necessarily the identical position) to that which the claimant was accustomed to perform or was undertaking when the injury occurred. See Scott v. Hillyer, Deutsch, Edwards, Inc., 217 La. 596, 46 So.2d 914."

5. Reed v. Calcasieu Paper Company, 233 La. 747, 98 So.2d 175; Morgan v. American Bitumuls Co., supra; Scott v. Hillyer, Deutsch, Edwards, Inc., 217 La. 596, 46 So.2d 914.

6. In Reed v. Calcasieu Paper Company, 233 La. 747, 98 So.2d 175, 178, the Supreme Court stated:

"Whether plaintiff was a skilled laborer or a manual laborer is not the issue in this controversy. In the light of the evidence we think it is obvious that plaintiff, a common laborer, is unable to resume laborious or strenuous manual labor or employment of a reasonably similar nature. Obviously, he is no longer competent to perform duties requiring strenuous physical effort and can no longer compete with other able-bodied laborers in the securing of employment, and in our opinion he is permanently and totally disabled within the meaning and comtemplation of the compensation statute. * * *"

See also Malone, Louisiana Workmen's Compensation § 275.

7. LSA–R.S. 23:1221(4) (k).

has a neuroma in the stump of his fourth finger and that this neuroma is extremely sensitive to palpation. These doctors further testified that this neuroma can be excised by a simple operation performed under a local anesthetic. The defendants have offered to give Dillon such an operation. Dillon, speaking through his attorney, has refused, maintaining that under the jurisprudence of Louisiana a compensation claimant may not be required to accept an operation.

■■ It is clear from the evidence that in spite of the two procedures already performed on Dillon's right hand, he still suffers pain in the stumps and generalized swelling of the hand. It is also clear from the jurisprudence of this state that no man can be required to work in pain, and the fact that a man does work in pain to support himself and his family in no way proves that he is not entitled to compensation benefits under the Act.[8] Dillon's attempt to work since the accident, therefore, may be disregarded as proof of his ability so to do, and the employer is not entitled to a reduction in compensation payments equal to the amount so earned.[9] Because of the continuing pain in Dillon's right hand, he has, in law, been totally disabled since his accident and has been owed compensation for total disability since that time.

■ Because this pain can be relieved, however, by a minor operation, Dillon should be required to accept defendants' offer of that operation or suffer the termination of his compensation. It is true that the Louisiana cases hold that a compensation claimant may not be required to accept a major operation which may endanger his life.[10] But the operation proposed here is not a major one and it would be wrong simply to allow Dillon to sit out the 400 weeks' compensation with a pain in his finger when that pain can so easily be relieved.[11]

■ There is also a claim here for penalties and attorney's fees [12] because of defendants' arbitrary failure to pay compensation as required by law. This claim is well made. The minimum which defendants under the Act owed Dillon was twenty weeks' compensation for the loss of two phalanges of the fourth and fifth fingers of the right hand.[13] This is spelled out in the Act so unmistakably that only arbitrary refusal to see what is there to see and to comply therewith can explain the defendants' failure. Moreover, Dr. Irving Cahen, a respected orthopedic surgeon who examined Dillon for the defendants, advised them that Dillon was suffering from a painful neuroma in the stump of one of his amputated fingers. Yet the defendants made no effort until the time of trial to offer the plaintiff further medical attention or compensation.

It is the order of the court that the plaintiff be paid compensation, with interest from due date, from the date of his injury up to the time he recovers from an operation to remove the neu-

---

8. In Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1, 3, the Supreme Court stated:

"* * * The law does not expect, and it does not contemplate, that a worker, in order to make a living, must work in pain, or that he do so when it will materially increase not only the hazards to his own health and safety, but also to those of his fellow employees. This is the settled jurisprudence of all of the appellate courts of this state. * * *"

See also Reed v. Calcasieu Paper Company, supra.

9. See McKean v. W. Horace Williams Company, D.C., 166 F.Supp. 526; Geiger v. Globe Indemnity Co., D.C., 156 F.Supp.

615, affirmed 5 Cir., 257 F.2d 415; Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; White v. Calcasieu Paper Company, La.App., 1 Cir., 96 So. 2d 621; Myers v. Jahncke Service, Inc., La.App., Orl.Cir., 76 So.2d 436.

10. McKean v. W. Horace Williams Company, supra; Simmons v. Blair, 194 La, 672, 194 So. 585; Bronson v. Harris Ice Cream Co., 150 La. 455, 90 So. 759.

11. See Powers v. Allied Chemical & Dye Corp., La.App., 1 Cir., 46 So.2d 332; Leday v. Lake Charles Pipe & Supply Co., La.App. 1 Cir., 185 So. 655.

12. LSA–R.S. 22:658.

13. LSA–R.S. 23:1221(4) (k).

roma in his right hand, allowance to be made for compensation already paid. If, within thirty days after this judgment becomes final, the plaintiff fails to accept that operation, compensation will be terminated as of that date. It is further ordered that penalties at the rate of 12 per cent interest on each compensation payment from its due date until paid be assessed against the insurer together with 20 per cent attorney's fees.

Judgment accordingly.