Albert ROELOFS, Jr., and Vivian Roelofs

v.

LEWALS, INC., et al.,
The Travelers Insurance Company,
Intervenor.

The TRAVELERS INSURANCE COMPANY and Travelers Indemnity Company, Third-Party Defendants.

Albert ROELOFS, Jr., and Vivian Roelofs

v.

The UNITED STATES of America.

The Travelers Insurance Company,
Intervenor.

B. B. DURHAM

v.

The UNITED STATES of America.

Frank Lee JACKSON and Erma
Lea Jackson

v.

HONEYWELL, INC.

William Carl MONTGOMERY, Jr.,
Individually, etc., et al.

v.

The UNITED STATES of America.

Mrs. Elsie E. Breda TEWELL, Individually, etc., et al.

v.

The UNITED STATES of America.

Mrs. Dorothy Mae THOMAS, Individually, etc., et al.

v.

The UNITED STATES of America
and Honeywell, Inc.

Arnold McKINNEY

v.

The UNITED STATES of America.

The Travelers Insurance Company,
Intervenor.

Nelson E. PETERSON

v.

The UNITED STATES of America.

The Travelers Insurance Company,
Intervenor.

Thomas HOLLAND

v.

The UNITED STATES of America.

The Travelers Insurance Company,
Intervenor.

Harrison Lee JACKSON

v.

The UNITED STATES of America.

The Travelers Insurance Company,
Intervenor.

Civ. A. Nos. 14081, 14556, 14661, 14856,
15382, 15428, 15944, 15951–15954.

United States District Court,
W. D. Louisiana,
Shreveport Division.

May 31, 1972.

Kenneth Rigby, Love, Rigby, Dehan & Love, Shreveport, La., for plaintiffs Albert Roelofs, Jr., and Vivian Roelofs.

Jack Benjamin, Kierr & Gainsburgh, New Orleans, La., for B. B. Durham.

James J. Thornton, Jr., Johnston, Johnston & Thornton, and Hugh M. Stephens, Shreveport, La., for Frank Lee Jackson and Erma Lea Jackson.

Leonard L. Lockard, Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, La., for William Carl Montgomery, Jr.

Nesib Nader, Shreveport, La., for Mrs. Elsie E. Breda Tewell, and others.

Donald R. Miller, Miller & DeLaune, Shreveport, La., for Mrs. Dorothy Mae Thomas, and others.

Lewis Weinstein, Shreveport, La., for Arnold McKinney, Nelson E. Peterson, Thomas Holland and Harrison Lee Jackson.

Wilton H. Williams, Jr., Blanchard, Walker, O'Quin & Roberts, Shreveport, La., for Travelers Ins. Co. and Travelers Indemnity Co.

G. M. Bodenheimer, Jr., Bodenheimer, Jones, Klotz & Simmons, Shreveport, La., for Lewals, Inc., and Zurich Ins. Co.

Donald E. Walter, U. S. Atty., and Dosite H. Perkins, Asst. U. S. Atty., West-

ern District of Louisiana, Shreveport, La., for the United States.

Paul R. Mayer, Mayer & Smith, Shreveport, La., for Honeywell, Inc.

Wilton H. Williams, Jr., Blanchard, Walker, O'Quin & Roberts, Shreveport, La., for The Travelers Ins. Co.

BENJAMIN C. DAWKINS, Jr., Chief Judge.

## OPINION

The above-captioned cases are before this Court on a motion filed by the plaintiffs[1] to strike the Government's affirmative defense of non-liability under the Federal Tort Claims Act (28 U.S.C. §§ 1346, 2671 et seq.). The single question which now requires answering is: Does Louisiana Workmen's Compensation provide the exclusive remedy for plaintiffs?

Sperry Rand Corporation, pursuant to a contract with the Ammunition Procurement and Supply Agency of the United States Army, operates the Louisiana Army Ammunition Plant (LAAP), approximately 20 miles from Shreveport. Article II, Paragraph 1, of the contract (No. DA–11–173–AMC–80) authorizes the contractor to hire employees, obtain supplies, prepare and load products for shipment, and do other things required in running the plant. The United States reimburses all the corporation's allowable allocable costs plus a fixed fee. Sperry Rand is obligated, pursuant to the contract (Articles IV H(1) and S (a)) to obtain workmen's compensation insurance in accordance with Louisiana Statutory requirements. Premiums for that insurance are paid also by the Government according to the terms of the contract.

Each of the plaintiffs was an employee of Sperry Rand and was injured while allegedly in the course of his employment with that company. Prior to institution of the suits, one of the plaintiffs (Durham) filed a claim with the Department of Labor's Bureau of Employees' Compensation. The Bureau determined that Durham, and presumably, all the plaintiffs were not federal employees and, therefore, were not entitled to any benefits under the Federal Employees' Compensation Act (5 U.S.C. §§ 8101–8150).

The Government contends it is a statutory employer ("principal" or "remote," as is sometimes said) within the meaning of the Louisiana Workmen's Compensation Act (LSA–R.S. 23:1021, et seq.) which affords plaintiffs their exclusive remedy and as such is exempt from liability under the federal Act. Plaintiffs contend that the Louisiana Act is inapplicable and there is an available remedy against the United States through the Federal Tort Claims Act.

Legislatures in most of the States have enacted various workmen's compensation schemes to furnish employees a speedy and equitable salary replacement, and medical expenses, during convalescence, for injuries received while in the course of employment, or for payments to dependents, including funeral expenses, of an employee who dies in a job-connected accident. By Act No. 20 of 1914, the State of Louisiana enacted the Burke-Roberts Employers' Liability Act in keeping with the current throughout the country "so that the social obligations existing between the employee and employer might be readjusted to meet the modern trend. This act, with its amendments, has come in time to be referred to as the Workmen's Compensation Act."[2] The Courts of Louisiana have given this Act a generous interpretation in order to effectuate the humane policies which it reflects. Green v. Heard Motor Co., 224 La. 1077, 71 So.2d 849 (1954); Brownfield v. Southern Amusement Company, Inc., 196 La. 73, 198 So. 656 (1940); Beard v. Wilson Wholesale

[1.] All plaintiffs, except Durham, were injured in explosions which occurred at the Louisiana Army Ammunition Plant. Durham fell from an intra-plant railroad boxcar.

[2.] Puchner v. Employers' Liability Assurance Corporation, 198 La. 921, 5 So.2d 288, 291 (1941).

Distributors, Inc., 215 So.2d 664 (La. App., 1st Cir., 1968). Federal diversity Courts under the direction of Erie Railroad v. Tompkins uniformly apply the Act liberally. Serpas v. W. Horace Williams Co., 160 F.Supp. 850 (E.D.La., 1958), aff'd 261 F.2d 857 (5th Cir.); Fontenot v. Stanolind Oil & Gas Co., 144 F.Supp. 818 (W.D.La., 1956), aff'd 243 F.2d 574 (5th Cir.).

Similarly, federal compensation systems were enacted for humane purposes. The legislation, in each instance, made limited inroads on sovereign immunity to damage claims. In United States v. Demko, 385 U.S. 149, 151, 87 S.Ct. 382, 383, 17 L.Ed.2d 258 (1966), the Court wrote:

"Historically, workmen's compensation statutes were the offspring of a desire to give injured workers a quick and more certain recovery than can be obtained from tort suits based on negligence and subject to common-law defenses to such suits. Thus compensation laws are practically always thought of as substitutes for, not supplements to, common-law tort actions. A series of comparatively recent cases in this Court has recognized this historic truth and ruled accordingly. Johansen v. United States, 343 U.S. 427 [72 S.Ct. 849, 96 L.Ed. 1051], and Patterson v. United States, 359 U.S. 495 [79 S.Ct. 936, 3 L.Ed.2d 971], for instance, are typical of the recognition by this Court that the right of recovery granted groups of workers covered by such compensation laws is exclusive."

The States' workmen's compensation laws were made applicable to federal properties by Section 290, Title 40 of the United States Code.[3] The Third Circuit Court of Appeals in Capetola v. Barclay White Co., 139 F.2d 556 (3rd Cir., 1943), cert. den'd 321 U.S. 799, 64 S.Ct. 939, 88 L.Ed. 1087, clearly placed that statute in its proper perspective.

"It is, of course, patent from a reading of the Act of 1936 that Congress did not thereby adopt State Compensation Acts as federal law applicable to federal territories within the exterior boundaries of the States. But it is our opinion that the purpose and effect of the congressional Act was to free State workmen's compensation laws from the restraint upon their enforcement theretofore existing by reason of the exclusive federal jurisdiction of lands within the States. . . (At p. 559.)

See also Wallach v. Lieberman, 366 F.2d 254 (2d Cir., 1966); Stacey v. United States, 270 F.Supp. 71 (E.D.La., 1967). The obvious intent of Congress was to protect employees of Government contractors injured on federal property. Nonetheless, Section 290 did not authorize the Government to avail itself of the rights or liabilities attendant to local workmen's compensation systems.

3. "Whatsoever constituted authority of each of the several States is charged with the enforcement of and requiring compliances with the State workmen's compensation laws of said States and with the enforcement of and requiring compliance with the orders, decisions, and awards of said constituted authority of said States shall have the power and authority to apply such laws to all lands and premises owned or held by the United States of America . . . which is within the exterior boundaries of any State and to all projects, buildings, constructions, improvements, and property belonging to the United States of America, which is within the exterior boundaries of any State, in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the State within whose exterior boundaries such place may be. " . . . Provided, however, That by the passage of this section the United States of America in nowise relinquishes its jurisdiction for any purpose over the property named, with the exception of extending to the several States within whose exterior boundaries such place may be only the powers above enumerated relating to the enforcement of their State workmen's compensation laws as herein designated: Provided further, That nothing in this section shall be construed to modify or amend the United States Employees' Compensation Act, as amended."

**1008**

Plaintiffs assert that we have jurisdiction over their claims under the Federal Tort Claims Act.[4] Plaintiffs object to the Government's defense on the ground that the Louisiana compensation system could make the United States liable as a statutory employer to suits by employees of private contractors. Plaintiffs contend that there is no legislative consent to be sued, unequivocally expressed, for a percentage of wages under the compensation system. Defendant suggests to the Court that it is precisely those statutes which, if read properly, require the application of Louisiana Workmen's Compensation laws and, consequently, would foreclose recovery against the Government here.

 It is axiomatic that the United States cannot be sued without its consent, and this Court has no jurisdiction in a suit against the United States to which it has not consented. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940).[5] This consent can be given only by the Congress, must be specific and explicit, and cannot be implied by construction of an ambiguous statute. A district court's jurisdiction over the United States depends entirely upon the terms of the congressional enactment which waives sovereign immunity. See Stanton v. United States, 434 F.2d 1273 (5th Cir., 1970); Gnotta v. United States, 415 F.2d 1271 (8th Cir., 1969) (Blackmun, Circuit Judge) cert. den'd 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115. Though the FTCA waives tort immunity, it was not intended as a total abolition of over a century and a half's sovereign immunity of the United States. The language of the Act indicates that it is a limited measure under which the United States has consented to be sued for certain *negligent* acts of its employees.[6] Moreover, the Act "since it is a relinquishment of a sovereign immunity, must be strictly interpreted." 312 U.S. 584, 590, 61 S.Ct. 767, 771. See also Bialowas v. United States, 443 F.2d 1047 (3rd Cir., 1971).

We think it helpful briefly to discuss the federal compensation system and, in doing so, distinguish the related cases. The Supreme Court in Johansen v. United States, 343 U.S. 427, 441, 72 S.Ct. 849, 857, 96 L.Ed. 1051, wrote: "As the Government has created a comprehensive system to award payments for injuries, it should not be held to have made exceptions to that system without specific legislation to that effect." In a foot-

---

4. 28 U.S.C. § 1346(b):

"(b) Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 2674:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

"If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof."

5. "Probably no principle of law is better established than that the United States may not be sued without its consent." Simons v. Vinson, 394 F.2d 732, 735–736 (5th Cir., 1968), cert. den'd 393 U.S. 968, 89 S.Ct. 398, 21 L.Ed.2d 379.

6. 28 U.S.C. § 1346(b), the exceptions to which are found in 28 U.S.C. § 2680. See Vigil v. United States, 293 F.Supp. 1176 (D.Colo., 1968), aff'd 430 F.2d 1357 (10th Cir., 1970).

note to the opinion of the Court in United States v. Demko, *supra*, the Court explained: "The lower federal courts have held, uniformly, that persons for whom the Government has supplied an administrative compensation remedy are precluded from seeking recovery against the United States for injuries received in the course of their work under the Federal Tort Claims Act, the Jones Act, the Suits in Admiralty Act, or the Public Vessels Act." (At n. 4, p. 151 of 385 U.S., at p. 384 of 87 S.Ct.) The emphatic meaning of this is that where there are two systems of liability against the Government it (administrative compensation) should be the exclusive one. See Davis v. Harrod, 132 U.S.App.D.C. 345, 407 F.2d 1280 (1969); Aubrey v. United States, 103 U.S.App.D.C. 65, 254 F.2d 768 (1958).

■ Of course, monies received by employees under Louisiana Workmen's Compensation are not paid out by virtue of a congressional act. Consequently, the possibility of recovery against the United States under the FTCA is not barred *merely* because there is an available remedy under the Louisiana Workmen's Compensation Act, even though written with an exclusivity clause.

■ Cases in which federal employees are presented with a governmentally created mode of recovery for injury but are required to accept payments under a federal compensation scheme are distinguishable from the case at bar where employees claim alleged tortious acts committed by Government personnel and have received benefits from a non-federal source.[7]

The Louisiana workmen's compensation statute describes liability of the statutory employer,[8] and provides that the remedies under the Act constitute the employee's exclusive rights.[9]

In an article written for the Louisiana Law Review, Professor Wex S. Malone discusses the meaning of Section 23:1061 and its counterparts in different jurisdictions:

"In the absence of some special provision in the Workmen's Compensation Act it would be possible for an employer to avoid his compensation responsibility merely by interposing an independent contractor or subcontrac-

7. See Granade v. United States, 237 F. Supp. 211 (S.D.N.Y., 1965), aff'd 356 F.2d 837 (2d Cir., 1966), (18 U.S.C. § 4126 and 28 U.S.C. §§ 1346(b), 2671 et seq.); Melancon v. Morrison-Knudsen International Co., 329 F.Supp. 981 (W.D. La., 1971), aff'd Melancon v. RMK–BRJ, 449 F.2d 1289 (5th Cir.) (42 U.S.C. §§ 1701–1717, 5 U.S.C. §§ 8101–8150 incorporated by reference, 42 U.S.C. § 1701 (a)); Gradall v. United States, 329 F. 2d 960, 161 Ct.Cl. 714 (1963) (Federal Tort Claims Act or the Federal Employees' Compensation Act and 5 U.S.C. § 150(k)); Rizzuto v. United States, 298 F.2d 748 (10th Cir., 1961) (FTCA and 5 U.S.C. § 150(k)); *Cf.* United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1962); Daniels v. Chanute Air Force Base Exchange, 127 F.Supp. 920 (E.D.Ill., 1955).

8. LSA–R.S. 23:1061:
"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section

referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed."

9. Section 23:1032:
"The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations."

tor between himself and his employees. This, of course, would not deprive the employee of protection so long as the intermediary contractor is solvent or protected by insurance. However, the possibility of using an impecunious middleman as a means of dodging compensation remains, and it was necessary to prevent this by subjecting certain principals to the compensation claims of their contractor's employees. A provision of this type is found in most compensation acts, and the principal who is affected thereby is commonly known as the statutory employer. Section 6 of the Louisiana Act sets forth the obligations of such a principal." 10 La.L.Rev. 25 (1949).

See also Arnold v. Shell Oil Co., 419 F.2d 43 (5th Cir., 1969); Jones v. Southern Tupelo Lumber Co., 257 La. 869, 244 So.2d 815 (1971).

■■■■ The test for determining whether an activity is part of an employer's trade or business for purposes of the Louisiana workmen's statute is whether the particular activity is an essential or integral part of the employer's business. Arnold v. Shell Oil Co., *supra;* Thibodaux v. Sun Oil Co., 40 So.2d 761 (La.App. 1st Cir., 1949), aff'd 218 La. 453, 49 So.2d 852 (1950); Turner v. Oliphant Oil Corp., 200 So. 513 (La.App.2d Cir., 1940). For purposes of this motion, we conclude that manufacture of ammunition is essential to the United States's business of maintaining a peacekeeping defense establishment. The second prerequisite to qualification as a "principal" is proof, easily supplied here, of a contracting with another for the whole or any part of the work undertaken. Indeed, Durham concedes, for this motion, that "were the United States of America not a sovereign under the facts of this case it could qualify as a principal [or 'remote'] employer, and the work being performed would be consideerd part of its trade, business or occu-

pation." 10 (Plaintiff's brief.) If the United States were a private individual, partnership or corporation, admittedly, it would qualify as a statutory employer within the meaning of the Act and the exclusive remedy of the employees of the contractor would be under Louisiana's Workmen's Compensation Act. Castille v. Liberty Mutual Ins. Co., 356 F.2d 509 (5th Cir., 1966); Roberie v. Sinclair Refining Co., 252 So.2d 488 (La.App. 3rd Cir., 1971). Recovery against the United States would be excluded if it were such a private entity; but, since it is not, there must be congressional action evidencing an intent to avail the Government of local compensation systems.

■■■■ The Federal Torts Claims Act is a statutory waiver of immunity which provides a judicial remedy for tort claims against the Government. In Wiltse v. United States, 74 F.Supp. 786, 787 (W.D.La., 1947), the Court wrote:

"This statute does not create a cause of action, but waives *pro tanto* the sovereignty of the United States to permit suits for torts committed by agents and employees of the Government acting within the scope of their authority, or employment, to the same extent, and for the same reasons, which, under the State law, can be asserted against private persons, subject to the limitations above quoted."

See also Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Section 1346(b) of the Act provides that the United States shall be liable for the negligent or wrongful acts of its employees "under circumstances where the United States, if a private person, would be liable to the claimant", and Section 2674 states that the United States shall be liable "in the same manner and to the same extent as a private individual under like circumstances." Obviously, actions *ex delicto* brought against the Government are maintainable only if the law of the locale under like circumstances

---

10. Of course, the plea of "statutory or remote employer" is an affirmative plea and the burden of proving by a preponderance of the evidence would have to be dis-

charged by the Government. James v. Lykes Bros. S. S. Co., 175 So.2d 444 (La. App. 4th Cir., 1965).

would permit recovery. Despite the close connection between tort actions and actions under Workmen's Compensation, the FTCA refers to torts (a common law concept and remedy) and not to workmen's compensation, which is, of course, a statutory remedy.

We turn to the rather sparse jurisprudence to determine whether the FTCA has been interpreted to incorporate local compensation statutes. (The Third Circuit in Capetola v. Barclay White Company, *supra*, concluded that 40 U.S.C. § 290 permitted local State workmen's compensation laws to have effect only between private contractor-employer and employee.) Federal Courts in Louisiana, Idaho, and South Carolina have discussed the relationship between State workmen's compensation statutes and the Federal Tort Claims Act.

In Stacey v. United States, 270 F. Supp. 71 (E.D.La., 1967), Judge Christenberry wrote:

> "The United States cannot be held liable to plaintiff or any third-party complainant or cross-claimant since it was the statutory employer of plaintiff. Sanderson v. Binnings Construction Company [172 So.2d 721 (La.App. 4th Cir. 1965)] and other cases cited above." (At p. 75.)

There, the plaintiff, an iron worker, brought suit against the United States, alleging jurisdiction under the Federal Tort Claims Act, on the theory that the United States was the owner of the premises at the Michoud facility, New Orleans. Welding and Manufacturing Company (W & M) contracted with the United States to undertake the job of modification of the roof tresses at the plant. Mason-Rust, a joint venturer, entered into a contract with the United States as a support service contractor. By virtue of the latter contract, Mason-Rust had the obligation and duty to supervise safety in the Michoud plant, and the Court found that it had failed and neglected to perform its duty in connection with safety supervision. The Court specifically found that "there has been no showing of any breach of duty or negligence on the part of any employee,

agent or servant of the United States of America." (At p. 73.) Judge Christenberry concluded that NASA was a congressionally created civilian agency which was charged with control of aeronautical and space activities of the United States. By virtue of the acts of Congress, it was established as a matter of law that the work which was being carried on by W & M on behalf of the United States through NASA was part of the regular business activities of NASA and was within the function or "usual trade, business or occupation" of NASA within the meaning of the Louisiana Workmen's Compensation sections. The Court decided that the Louisiana Workmen's Compensation statute was applicable to federal properties, citing 40 U.S.C. § 290, and that

> "[t]he United States of America, through the National Aeronautics and Space Administration (NASA) is, under the Louisiana Workmen's Compensation Act (RS 23:1061), a statutory employer of plaintiff, and like a private individual under like circumstances the United States would be a principal under the Louisiana Workmen's Compensation Act, and protected in the same manner and to the same extent as an employer, by the exclusive benefits provided therein." (Citations omitted.) (At p. 75.)

References to Louisiana Workmen's Compensation and the United States as a statutory employer of plaintiff are mere dictum in light of the specific finding in that case that the Government was not negligent. Suit under the FTCA will result in liability on behalf of the Government only where plaintiffs can prove negligence. The conclusion that the United States benefited under the exclusivity provisions of the Louisiana Workmen's Compensation statute was unnecessary to decision and as such is of slight precedential value. We hesitate to consider it even persuasive since there was no discussion of the gravamen of the objection to application of Louisiana's Workmen's Compensation Act made by plaintiffs in the case *sub judice*.

In Kirk v. United States, 124 F.Supp. 233 (D.Idaho, S.D., 1954), representatives of the deceased employee brought a tort action against the United States alleging that it was through the Government's employees' carelessness and negligent failure to perform their duties that William M. Kirk died. Plaintiffs there alleged that the Army Corps of Engineers was engaged in the construction of a dam on the Boise River, as authorized by statute and regulation of the United States of America and the Department of the Army. Kirk was employed as a carpenter by Bruce Construction Company which had contracted with the Government to do work on the project. Plaintiffs admitted receiving a substantial sum under the Idaho Workmen's Compensation Act, but commenced the suit in federal court relying on 28 U.S.C. § 2674. The Idaho Workmen's Compensation law fashioned this statutory remedy as the exclusive remedy of employees against their employers and further provided that:

"An employer subject to the provisions of this act, shall be liable for compensation to an employee of a contractor or subcontractor under him or who has not complied with the provisions of section 72–801 in any case where such employer would have been liable for compensation if such employee had been working directly for such employer. The contractor or subcontractor shall also be liable for such compensation, but the employee shall not recover compensation for the same injury from more than one party." Section 72–811, I.C. (At. p. 235.)

The Court noted that the contractors were performing work for the United States and did comply with the Workmen's Compensation laws of the State of Idaho by obtaining that protection for their employees. Without extensive analysis, the Court unhesitatingly concluded:

"Under the allegations of plaintiffs' complaint the contractors for whom the decedent was working at the time of his death were the agents of the defendant and the defendant maintained supervision and control of the construction. Under such circumstances the United States was the employer as defined by the Workmen's Compensation Laws of Idaho. Under and by virtue of the Federal Tort Claims Act the United States has consented to be sued for torts committed by it *in the same manner and to the same extent as a private individual under like circumstances.* The United States having submitted to suit as if a private person, its liability and defenses under local law must be considered in terms of the application of said local law to a private individual. It must be conceded that under the circumstances of this case a private individual would not be liable to the plaintiffs due to the provisions of Section 72–203, I.C." (At p. 236.) (Emphasis in original.)

The Ninth Circuit, in reversing the District Court's ruling,[11] did not question the applicability of Idaho's Workmen's Compensation Law, Idaho Code, Sections 72–101, 72–1103, to the facts. The higher Court merely disagreed with the District Court's decision that the United States was an "employer" within the meaning of the statute in relation to the work that was under way.[12] There-

---

11. 232 F.2d 763 (9th Cir., 1956).

12. "Perhaps the most numerous types of persons in the State of Idaho likely to be constructing dams would be farmers or groups of farmers building dams and other irrigation works to provide the artificial application of water to arid lands. Such enterprises come within the definition of 'agricultural pursuits', also exempt under § 72–105a . . . . If such a farmer, exempt under the Act, were guilty of negligence while his dam was under construc-

tion by an independent contractor, and if that negligence caused death or injuries to the contractor's employee, an action would lie against the farmer. So in the case of the suppositious private corporation, such perhaps as a church, operating not for the sake of pecuniary gain, exempt under subdivision 8, *supra.* Both of these are instances presenting *like* circumstances within the meaning of Title 28 § 2674. Both supply an answer to the important inquiry as to whether there is an 'anal-

fore the Court reversed and remanded for determination of whether or not there was negligence on the part of the United States. The case appeared again in the Circuit Court [13] and, as before, there was no questioning of Idaho Workmen's Compensation statute's applicability to the facts. The Court concluded that there was no duty on behalf of the United States and therefore a negligence cause of action could not be maintained.[14]

Doubtless the Ninth Circuit has concluded that local compensation systems can protect the United States from liability in circumstances where the Government qualifies as a statutory employer and compensation system is made the exclusive remedy of the employee. Nevertheless, their opinions shed no light on the intermediary steps they took in deciding the statute was applicable or whether the present problem was discussed.

In United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), reh'g den'd 397 U.S. 1031, 90 S.Ct. 1255, 25 L.Ed.2d 546, the Court reversed an appellate decision [15] which held that a provision common to fixed-price Government construction contracts could not be interpreted to allow the Government to recover from the contractor damages suffered by the Government on account of its own negligence. The Government had entered into a contract with defendant for performance of certain plumbing work at a Marine base in South Carolina. One of the private contractor's employees, Branham, was seriously injured when he came in contact with an electric wire that carried 2400 volts of electricity. The Supreme Court noted that the injured employee had recovered benefits under South Carolina's Workmen's Compensation Law, S.C.Code Ann. §§ 72–1 to 72–504 (1962), and then commenced a suit in the Eastern District of South Carolina against the United States under the Federal Tort Claims Act, on the theory that his injuries had been sustained as the result of the Government's negligence. The South Carolina District Court held that the Government had been grossly negligent in failing to de-energize the wire in this particular case and awarded Branham $45,000 in an unreported decision by Judge Timmerman. No appeal was taken from the judgment of the District Court, so its holding was not subject to review by the United States Supreme Court. The decree in the unreported case, Branham v. The United States of America, (E.D.S. Car., Columbia Div., June 23, 1961) makes no reference to Branham's earlier recovery of an award under workmen's compensation. The South Carolina Workmen's Compensation law protects an employee who is engaged in an employment under any contract of hire when he is injured in the course of the trade, business, profession or occupation of his employer. Section 72–11. Section 72–111 describes the liability of an owner to workmen of a subcontractor in language strikingly similar to that found in Louisiana Workmen's Compensation statutes:

> "When any person, in this section and §§ 72–113 and 72–114 referred to as 'owner,' undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 72–113 to 72–116 referred to as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay

---

ogous liability' in the law of torts. There is." (At p. 768.)

13. 270 F.2d 110 (9th Cir., 1959).

14. More recently the Ninth Circuit in Ray v. Monsanto Co., 420 F.2d 915 (9th Cir., 1970), cited the first *Kirk* decision with approval, without discussing the underlying theme that access to the Federal Tort Claims Act could be barred by Idaho Workmen's Compensation laws relating to statutory employers and exclusiveness.

15. 408 F.2d 146 (5th Cir., 1969). The Supreme Court held that the Government was entitled to indemnity on a comparative basis to the extent that the employer's negligence contributed to the employee's injuries.

to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him." [16]

The purpose of this section is the same as found in Louisiana Workmen's Compensation statute as discussed by Professor Malone. See Blue Ridge Rural Electric Cooperative, Inc., v. Byrd, 238 F.2d 346 (4th Cir., 1956), reversed on other grounds 356 U.S. 525, 78 S.Ct. 893, 21 L.Ed.2d 953 (1958); Adams v. Davidson-Paxon Co., 230 S.C. 532, 96 S.E.2d 566 (1957). Section 72–121 [17] specifically excludes all rights and remedies of an employee against his employer except as provided in the Workmen's Compensation Act. Adams v. Davidson-Paxon Co., *supra*; Gainey v. Coker's Pedigreed Seed Co., 227 S.C. 200, 87 S.E.2d 486 (1955). Despite a South Carolina compensation system which exclusively restricts employees of private contractors to a statutory remedy, the Federal District Court sitting in South Carolina permitted an injured employee to bring suit against the United States; after trial the Court determined that the Government was grossly negligent and should pay plaintiff a substantial amount without reference to the sum he had recovered through workmen's compensation.

▪ Consequently, we are unable to discern an unqualified line of jurisprudence compelling us to a single conclusion; we know of none, nor have we been cited to any decisions of the Fifth Circuit which would be controlling in this area. Our decision rests, therefore, on an interpretation of the Federal Tort Claims Act, mindful that "[i]t is not our right to extend the waiver of sovereign immunity more broadly than has been directed by the Congress." United States v. Shaw, 309 U.S. at 502, 60 S.Ct. at 662; see also Gardner v. United States, 446 F.2d 1195 (2d Cir., 1971).

▪ We hold that Congress in passing the FTCA referred only to the common law tort cause of action. Were we to permit the Louisiana Workmen's Compensation Statute to be incorporated into the Federal Tort Claims Act, it would drive a greater breach into the doctrine of sovereign immunity than the Congress intended. We are cognizant of the fact that the United States pays workmen's compensation premiums according to its contract to protect Sperry Rand Corporation. Nevertheless, only tort immunity has been waived and that only in a strictly interpreted manner. Application of the Louisiana Workmen's Compensation statute to this situation would permit an employee of a private contractor, theoretically, to sue the Government for an award according to the Louisiana system's wage levels. Nowhere in congressional legislation, nor conclusively in the jurisprudence, is there the specificity required for authorization to extend our jurisdiction to entertain that cause of action.

▪ A local compensation system which permits recovery against a statutory employer cannot be used to seek workmen's compensation relief from the Government, nor may the Government avail itself of the exclusive benefits thereunder, unless there has been consent by an unambiguous statute passed by the Congress.

It is ordered that the motion to strike the defense asserted here is granted. [18]

16. The term "owner" is synonymous with the principal contractor. Marchbanks v. Duke Power Co., 190 S.C. 336, 2 S.E.2d 825 (1939).

17. "The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death."

18. The view we taken obviates discussion of plaintiffs' further objections to the United States' defense.